UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

YELENA ALASHKEVICH,

                                        Plaintiff,

v.                                                                    1:04-CV-0787
                                                                      (LEK/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

EMPIRE JUSTICE CENTER                           LOUISE MARIE TARANTINO, ESQ.
Counsel for Plaintiff
119 Washington Avenue
2nd Floor
Albany, New York 12210

HON. GLENN T. SUDDABY                           WILLIAM H. PEASE, ESQ.
United States Attorney for the                  Assistant United States Attorney
    Northern District of New York
Counsel for Defendant
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION[1]

## I.      BACKGROUND

### A.      Procedural History

Yelena Alashkevich ("Plaintiff") filed an application for Supplemental Security Income

_____

[1]      This matter was referred to me for report and recommendation by the Honorable
Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern
District of New York Local Rule 72.3.

benefits on November 22, 1999.  (Administrative Transcript ("T") at 94.)  This application was

denied on January 11, 2000.  (T. at 23.)  Plaintiff requested a hearing before an Administrative

Law Judge ("ALJ") and one was held on October 18, 2000.  (T. at 312-327.)  On February 23,

2001, the ALJ  issued a decision finding that Plaintiff was not disabled.  (T. at 57-64.)

Plaintiff appealed to the Appeals Council, and the Appeals Council remanded the matter

for another hearing (T. at 70-73), which was held on September 10, 2002 (T. at 328-357).  The

ALJ issued a second unfavorable decision on January 22, 2003.  (T. at 12-20.)  This decision

became the final decision of the Commissioner of Social Security ("Defendant") when the

Appeals Council denied Plaintiff's request for review on May 4, 2004.  (T. at 2-4a.)  Plaintiff

commenced this action on July 7, 2004.  (Dkt. No. 1.)

### B.    The Contentions

Plaintiff makes the following claims:

1.    The ALJ failed to properly evaluate the medical evidence.  (Dkt. No. 9 at 19-22.)

2.    Defendant did not satisfy his burden at step five of the sequential evaluation.

(Dkt. No. 9 at 22-25.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus

should be affirmed.  (Dkt. No. 13.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or

supplemental security income benefits must establish that he is "unable to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1) (2006)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. § 416.920 (2006).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[]  If the claimant survives the fourth stage, the fifth, and

final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2006); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.   THE PLAINTIFF

Plaintiff was born on December 12, 1966 in the Ukraine and came to the United States on February 23, 1995.  (T. at 90, 315.)  She graduated from high school in the Ukraine and previously worked as a home health aide.  (T. at 316.)  Plaintiff alleges disability due to back and neck pain, numbness in her leg and arm, high blood pressure, and problems with concentration and memory.  (Dkt. No. 9 at 1.)

## IV.     THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had not engaged in substantial gainful activity since November 22, 1999 (T. at 20); (2) Plaintiff had severe impairments but they did not meet or medically equal one of the impairments listed in Appendix 1 to Subpart P of Part 404 (*Id.*); (3) Plaintiff was unable to perform her past relevant work (*Id.*); (4) Plaintiff retained the residual functional capacity ("RFC") to perform simple, unskilled work at the light level of physical exertion, with some limitations regarding complex tasks, highly stressful tasks, making decisions, and dealing with the public (*Id.*); and (5) given Plaintiff's RFC and vocational background and using Rule 202.17 of Appendix 2 to Subpart P of Part 404 (the "Grid") as a framework, Plaintiff was not disabled (*Id.*)

## V.     DISCUSSION

### A.     Did the ALJ Err in Failing to Properly Evaluate the Medical Evidence?

Plaintiff argues that the ALJ engaged in a "picking and choosing" style evaluation of the medical evidence and improperly gave little weight to treating and consultative sources, while crediting the opinions of a non-examining SSA review physician.  (Dkt. No. 9 at 19-22.) Specifically, Plaintiff contends, among other things, that the ALJ erred in accepting some of the opinions of Plaintiff's treating physician, Piotr Biegun, M.D., affording other of his opinions little weight, and crediting the opinion of a non-examining SSA review physician, Abdul Hameed, M.D.  (T. at 16.)  Defendant responds that the ALJ properly evaluated the medical evidence and correctly assessed Plaintiff's RFC.  (Dkt. No. 13 at 8-19.)

The medical opinions of a treating physician[2] are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. § 416.927(d)(2) (2006). In *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts. Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

*Halloran v. Barnhart*, 362 F.3d at 32.

However, "[a]n ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Id.* These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(d)(2) (2006). The Regulations further state that "good reasons"

---

[2]    "Treating source" is defined as one's own physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the patient/plaintiff/claimant. 20 C.F.R. § 416.902 (2006).

will be given for the weight afforded to the treating source's opinion.  *Id.*

In his decision, the ALJ afforded Dr. Biegun's opinions regarding Plaintiff's physical RFC "little weight."  (T. at 16.)  Because he refused to give controlling weight to Dr. Beigun's opinions, it was incumbent on the ALJ to consider and discuss the factors set forth in 20 C.F.R. § 416.927(d)(2) and to provide "good reasons" for the "little weight" afforded to Dr. Beigun's opinions.  The ALJ noted that Dr. Beigun was not a specialist and also briefly discussed the consistency of Dr. Beigun's opinions with other medical evidence.  (*Id.*)  However, these are only two factors, and the ALJ failed to discuss the length of the treatment relationship and frequency of examinations, the nature and extent of the treatment relationship, the medical evidence in support of the opinions, and any other factors that tend to support or contradict the opinions.  Accordingly, remand is recommended.

Furthermore, it is curious that the ALJ declined to give Dr. Beigun's opinions regarding Plaintiff's physical RFC controlling weight based, in part, on the fact that he was not a specialist, but that regarding Plaintiff's mental RFC the ALJ would credit Dr. Beigun's opinions and use them to discount those of Brett T. Hartman, Psy.D.[3]  The ALJ stated that "[a]lthough Dr. Biegun is not a specialist, he did treat the claimant for her depression, and his assessment is more consistent with the limited clinical abnormalities."  (T. at 17.)  In essence, the ALJ on the one hand refused to give controlling weight to Dr. Beigun's opinions because he was not a specialist, but then relied on his opinions to discount the opinions and limitations set forth by a specialist, Dr. Hartman.

---

[3]     Dr. Hartman conducted a psychiatric evaluation of Plaintiff on December 14, 1999.  (T. at 165-168.)

In addition, the ALJ did not state what weight he gave to the opinions of Hani A. Midani, M.D. and John T. Whalen, M.D., who also treated Plaintiff.  *See* 20 C.F.R. § 416.927(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").  While he discussed the medical evidence from Drs. Midani and Whalen, the ALJ failed to state what weight he gave their opinions and to discuss the "good reasons" for giving such weight.

Finally, "[i]n analyzing a treating physician's report, 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'"  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).  In this case, in rejecting the opinions of Dr. Biegun, the ALJ stated that "[t]he claimant often had limitation of motion in the neck or lower back, but muscle spasm which might corroborate loss of motion was generally absent."  (T. at 16.)  As a lay person, the ALJ was not in a position to know whether muscle spasms would or would not corroborate the limitation of motion in Plaintiff's neck and lower back.  *Id.* ("Indeed, as a 'lay person[],' the ALJ simply was not in a position to know whether the absence of muscle spasms would in fact preclude the disabling loss of motion described by Dr. Ergas in his assessment.").  As in the *Rosa* case, the ALJ in this case improperly substituted his own judgment for a competent medical opinion. Accordingly, for the reasons stated above, remand is recommended.

**B.      Did Defendant Satisfy His Burden at Step Five of the Sequential Evaluation?**

Plaintiff argues that the ALJ erred in relying on the vocational expert's response to a hypothetical question which did not include certain of Plaintiff's limitations.  (Dkt. No. 9 at 22-25.)  Plaintiff also argues that two of the jobs identified by the vocational expert appear to have requirements beyond those set forth by the hypothetical.  (Dkt. No. 9 at 23.)  Defendant concedes

this but also raises the point that the vocational expert identified a third job, that of a small products assembler, which Plaintiff could perform.  (Dkt. No. 13 at 17-18.)

In determining whether a claimant's work skills can be used in other work,[4] an ALJ may utilize the services of a vocational expert.  20 C.F.R. § 416.966(e) (2006).  A vocational expert may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations.  *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988) and *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).  A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony.  *See De Leon v. Secretary of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984) and *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996).  The Second Circuit has stated that there must be "substantial record evidence to support the assumption upon which the vocational expert based [her] opinion."  *Dumas*, 712 F.2d at 1554.

As stated above, remand has been recommended for reevaluation of the medical evidence, particularly the weight given to those physicians who treated Plaintiff.  It follows then, that remand is recommended on this issue as well because after reassessing all of Plaintiff's medical records, it is conceivable that the ALJ could come to a different conclusion regarding

---

[4]     In this case, the ALJ had to determine whether Plaintiff could perform other work because at the fourth step of the sequential evaluation, he found that Plaintiff retained the RFC to perform "simple, unskilled work at the light level of physical exertion which can be performed with some limitations performing complex tasks, performing highly stressful tasks, making decisions, and dealing with the public."  (T. at 20.)  According to the sequential evaluation, at the fifth step, it must be determined whether a claimant can make an adjustment to other work.  20 C.F.R. § 416.920(a)(4)(v) (2006).

Plaintiff's RFC than the one he reached in his January 22, 2003 decision[5].  If that is the case, then it is presumed that the ALJ will obtain further vocational expert testimony.  The ALJ should ensure that the jobs identified by the vocational expert, as ones the claimant can perform, are jobs that fall within the limits of the hypothetical(s) posed.

> **WHEREFORE**, it is hereby

> **RECOMMENDED**, that this matter be remanded to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g),[6] for further proceedings consistent with the above.

> Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y*

---

[5]     Even if the ALJ came to the same conclusion regarding Plaintiff's RFC, it may be necessary for the ALJ to obtain further vocational expert testimony since two of the jobs identified by the vocational expert at the September 10, 2002 hearing were outside the scope of Plaintiff's RFC. (Dkt. No. 9 at 23.)  Furthermore, with regard to the second hypothetical posed by the ALJ, there was apparently some confusion regarding how an "abnormal energy level" would affect Plaintiff's ability to perform the jobs identified by the vocational expert.

> VE:     The only thing is [sic] her energy level.  I don't know
>             (INAUDIBLE).
> ALJ:    Well, I don't, either.  It doesn't say.

(T. at 354.)  In the second hypothetical, the ALJ attempted to include restrictions from a mental status examination conducted approximately two months prior to the hearing.  However, it appears from the transcript that neither the ALJ nor the vocational expert knew what "abnormal energy level" meant and the vocational expert was unsure as to how it might affect Plaintiff's ability to work.  Upon remand, the ALJ should ensure that the hypotheticals clearly and accurately portray the full extent of Plaintiff's impairments and capabilities and that the hypotheticals are fully understood by all participants.

[6]     Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

*of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (2005); Fed. R.

Civ. P. 72, 6(a), 6(e).

Dated: July 26, 2007
      Syracuse, New York

                                        George H. Lowe
                                    United States Magistrate Judge

12